NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Lisa Michelle Connelly,<br><br>Petitioner,<br><br>v.<br><br>Gloria A. Henry et al.,<br><br>Respondent(s). | NO. C 03-00635 JW<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging her prison sentence under the California Three Strikes rule. Petitioner claims: (1) her sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, and (2) her counsel was ineffective for failing to request that the sentencing court reduce her two admitted wobbler offenses to misdemeanors.

## II. BACKGROUND

**A.** Factual Background:

Petitioner was born in 1966 to parents who were both heroin addicts. Petitioner herself was born an addict and evidence suggests that all her criminal behavior was a direct result of her drug habits and those of the men with whom she was involved. At the age of fifteen, she bore a daughter who was later molested by her then husband. The husband was subsequently convicted of child

molestation and in light of Petitioner's drug addiction, Child Protective Services took her daughter away from her.    In 1989, Petitioner was convicted of three counts of burglary.   Following these convictions, Petitioner was placed on probation and ordered to the Athena House residential drug treatment program.  However she was terminated from Athena House for non attendance.  Thereafter, she tested positive for methamphetamine and absconded from probation.  She was committed to the California Rehabilitation Center (CRC) and subsequently paroled on outpatient status.  In 1993 Petitioner was again arrested on a burglary charge and ordered to complete a Delancey Street residential treatment program but absconded after five months.  She was incarcerated in the county jail, from which she escaped.  She was arrested again five months later and served three and a half years of a twelve year, four month term before being paroled.  Her parole was revoked three times in sixteen months due to absconding, drug possession, and/or failure to follow parole instructions.

   Petitioner considered herself an alcoholic, drinking daily, although her parole forbade doing so.  She began inhaling methamphetamine at the age of eighteen and her use escalated to daily injections of ½ gram.  She was never able to abstain from illicit drug use when released from custody. Petitioner was granted parole after serving a portion of the sentence imposed on her for multiple burglaries and escape from lawful custody.  Among the conditions of parole were routine status meetings and regular drug testing.

   Her current conviction arose when she missed a drug test and a scheduled status meeting.  A warrant issued for her arrest as a parolee at large and Petitioner's parole officer informed Santa Rosa Police detective Philip Brazis of the warrant and the kind of car Petitioner drove.  Petitioner was arrested in a public parking structure and after authorization from the parole officer, detective Brazis searched her car.  Inside, he found numerous items of property not belonging to Petitioner.  Petitioner volunteered that she had "crank" in her front pant pocket.  The detective also seized a hypodermic needle and a glass smoking pipe.  Petitioner was charged with four felonies: first degree burglary, two counts of possession of stolen property, and one count of possession of methamphetamine.

   Pursuant to a negotiated plea bargain, the burglary charge was dismissed and Petitioner pled

1   no contest to a felony possession of a stolen autograph book and guilty to felony possession of 1.26
2   grams of methamphetamine. She admitted to three 1989 residential burglary convictions and one 1993
3   residential burglary conviction to count as prior strike convictions.

4   Under California Three Strikes law, Petitioner was sentenced to a 25-years-to-life prison
5   sentence. California's Three Strikes law, which appears in California Penal Code section 667(b)-(i),
6   was enacted by the Legislature and became effective March 7, 1994.[1] The heart of the Three Strikes
7   law is subdivision (e) of section 667, which prescribes increased terms of imprisonment for
8   defendants who have previously been convicted of certain "violent" or "serious" felonies, see Cal.
9   Penal Code § 667(d). The Three Strikes Law is specific in its intent to apply "in addition to any other
10  enhancement or punishment provisions which may apply . . ." Id.

11  **B.** Procedural Background:

12  The California Court of Appeals, addressing Petitioner's direct appeal, affirmed the trial court
13  judgment and upheld the prison sentence. Petitioner filed a petition for Writ of Habeas Corpus, which
14  the California Court of Appeals denied on August 23, 2001. On February 14, 2003, Petitioner filed
15  the instant petition through her attorney with this Court. On April 8, 2004, an order to show cause
16  issued regarding Petitioner's two claims. On August 3, 2004, this Court denied respondent's motion
17  to dismiss and reset the briefing schedule for the order to show cause.

18  ### III. STANDARDS

19  A district court may grant a petition for writ of habeas corpus "on behalf of a person in custody
20  pursuant to the judgment of a state court only on the ground that he/she is in custody in violation of the

---

[1] In addition to the California Legislature's version of the Three Strikes Law found at California Penal Code § 667, there is an initiative version of the Three Strikes Law found at California Penal Code § 1170.12. The initiative version of the Three Strikes Law was passed by the voters several months after the Legislature's version, and the California Supreme Court has not determined whether the latter supersedes the former. See People v. Superior Court (Romero), 13 Cal. 4th 497, 53 Cal. Rptr. 2d 789, 791-92 (1996). Although the two versions differ in minor respects, see id. at 792, the initiative's history demonstrates the unequivocal intent of the voters to adopt a sentencing scheme identical to the legislative version of the three strikes law, see People v. Hazelton, 58 Cal. Rptr. 2nd 443, 446 (1996) (using initiative's history to determine that the initiative version, like the legislative version, of the three strikes law counts out-of-state prior convictions as strikes).

**United States District Court**
For the Northern District of California

Constitution or Laws or Treaties of the United States." 28 U.S.C. § 2254(a). Further, under the Antiterrorism and Effective Death Penalty act of 1996 (AEDPA), a federal court has no authority to grant habeas relief unless the state court's ruling was (a) "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the United States Supreme Court," or (b) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d). The AEDPA requires a district court to presume correct any determination of a factual issue made by a state court unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003) (reversing judgment of 6th Circuit granting habeas relief on de novo review where claims did not meet standards for relief under §2254 (d)(1)).

Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by (the supreme) Court on a question of law or if the state court decides a case differently than (the) Court has on a set of marginally indistinguishable facts." Williams, 529 U.S. at 412. Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the court's decision but unreasonably applies that principle to the facts of the Petitioner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applies clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The AEDPA does not require a federal habeas court to adopt any particular methodology in deciding whether a state court decision is contrary to or an unreasonable explanation of clearly established federal law. Lockyer v. Andrade, 538 U.S. 63, 71 (2003). Clearly established federal

law, as determined by the Supreme Court of the United States refers to "the holdings, as opposed to the dicta, of (the Supreme) Court's decisions as of the time of the relevant state-court decision." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000).

## IV.  DISCUSSION

As grounds for habeas relief Petitioner alleges that: (1) her sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, and (2) her counsel was ineffective in failing to move the sentencing court to reduce her two admitted wobbler offenses to misdemeanors.

**A**.  **Petitioner's claim of Cruel and Unusual Punishment under the Eighth Amendment is without merit because her sentence arose out of her recidivism under the California Three Strikes rule, which has been upheld by the Supreme Court of the United States as constitutional**.

Under the California Three Strikes Law, Petitioner was sentenced to a 25-years-to-life prison sentence. Petitioner claims that this sentence constitutes cruel and unusual punishment under the Eighth Amendment.

In 2003, the United States Supreme Court upheld the constitutionality of California's Three Strikes law. Ewing v. California, 538 U.S. 11, 25 (2003). The Court maintained however, that any criminal sentence disproportionate to the crime for which the Defendant was convicted violates the Eighth Amendment proscription against cruel and unusual punishment.

The factual background in Ewing is somewhat similar to the case at bar in that it involved a Petitioner sentenced to a life term based on prior burglary convictions. Ewing, a parolee, walked into a Pro shop of the El Segundo golf course and walked out with three golf cubs concealed in his pant legs. In light of his prior criminal record ( auto theft, burglary, drug possession, arms possession, etc), the trial court convicted Ewing of felony grand theft and sentenced him to twenty five years to life imprisonment.

On appeal, the Supreme Court reviewed Ewing's sentence within the boundaries of the Eighth Amendment and found that the sentence was neither cruel nor unusual. In arriving at this decision, the Court revisited its holdings in Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277,

1  303 (1983), and Harmelin v. Michigan, 501 U.S. 957, 1001 (1991).

2  In Rummel, the Court upheld a 25-years-to-life with the possibility of parole sentence for a three time offender. Rummel, 445 U.S. 263 (1980). In doing so, the Court characterized recidivism statutes as nothing more than a societal decision to subject repeat offenders with the serious penalty of life imprisonment. Id. Three years later, in Solem, the Court rejected a life-without-parole sentence for a seventh non-violent felony. The Court in Solem specifically laid out three important factors in determining the proportionality of any criminal sentence. These objective criteria include a comparison of: (1) the gravity of the offense and harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the same crime in other jurisdictions. Solem v. Helm, 463 U.S. 277, 290 (1983). These criteria were further distilled in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), where, Justice Kennedy, writing the holding in the absence of a majority view, stated that only extreme sentences that are grossly disproportionate to the crime violate the Eighth Amendment. The holding also indicated that Solem "did not mandate" comparative analysis "within and between" jurisdictions. Id.

In light of the precedent, the Supreme Court's analysis in Ewing focused primarily on the gravity of Petitioner's offense and the harshness of the penalty. Ewing, 538 U.S. 11, 25 (2003). The Court found that Ewing's grand theft of $ 1,200 worth of golf equipment, by itself, constituted a grave felony and deserved a serious punishment. Id. at 29. In light of his recidivism, the Court found itself willing to sentence Petitioner under the Three Strikes Scheme. Id. "Ewing's sentence is justified by the state's public-safety interest in capacitating and deterring recidivist felons and amply supported by his own long, serious criminal record. Recidivism has long been recognized as a legitimate basis for increased punishment and states have a valid interest in deterring and segregating habitual criminals." Id. at 30.

In consideration of the above established federal law, this Court rejects Petitioner Connelly's claim of cruel and unusual punishment and finds the sentence not grossly disproportionate to Petitioner's crimes.

6

This Court notes that the California Court of Appeals applied the factors enumerated in <u>Lynch</u>, to determine the proportionality of the sentence imposed on Petitioner. <u>In re Lynch</u>, 8 Cal. 3d 410, 424 (1972). These factors ( the nature of the offense and/or the offender; a comparison of the instant punishment to other punishments imposed by the same jurisdiction for more serious offenses; and a comparison of the punishment to punishments imposed by other jurisdictions for the same offense) are similar, if not identical to the factors enumerated in <u>Solem</u>, 463 U.S. at 290-92. This Court proceeds with the analysis of the factors enumerated in <u>Solem</u>. <u>Id</u>.

1) <u>The nature of the offense and/or offender</u>:

Petitioner was sentenced to a 25-years-to-life prison term. Although Petitioner correctly claims that her current offenses do not amount to serious felonies, the state court explained that her sentence arose out of her recidivism under the California Three strikes law and not her individual offenses. Based on Petitioner's record, the state court found that she had problems with drugs and alcohol since at least her early teens and possibly even infancy. <u>People v. Connelly</u>, A091830.

Although Petitioner claims that all her offenses arose from her drug habits, the state court maintained that "drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long term problem and seems unwilling to pursue treatment." <u>Id</u>. It specified that the law holds individuals responsible for their behavior despite the misfortune of addiction and dysfunctional upbringing. <u>Id</u>.

The state court also found it fortuitous that the four residential burglaries committed by Petitioner did not result in physical harm, especially since these burglaries involved the invasion of sanctity of another person's home and were possibly committed by Petitioner under the influence of controlled substances. <u>Id</u>.

2) <u>Punishment in California for more serious crimes</u>.

Petitioner argues that her sentence is longer than that imposed for violent offenses such as voluntary manslaughter, rape, or kidnaping.

<u>Ewing</u> clearly establishes that analysis of the second and third factors enumerated in <u>Solem</u>,

1  463 U.S. 277, 290 (1983), is optional and the Court therefore need not consider Petitioner's claims
2  under these factors. Ewing v. California, 538 U.S. 11, 25 (2003). Even so, this Court finds that
3  Petitioner's sentence arose out of her recidivism under the Three Strikes rule and therefore can not be
4  compared to that of one time offenders, irrespective of the gravity of the crime.

3) Punishment in other states:

Petitioner contends that her sentence is disproportionate because California's recidivist statute is among the most extreme in the country and her offenses would have gained her a lower sentence in most other states.

Although California's recidivist statute is among the most extreme in the country, this fact alone does not compel the conclusion that it is unconstitutionally cruel or unusual. As previously mentioned, the Supreme Court in Ewing, 538 U.S. 11, 25 (2003), upheld the Three Strikes law as constitutional.

Petitioner fails to show that her sentence was either contrary to established Supreme Court law or an unreasonable application of the law to the facts of the underlying case and therefore her claim of cruel and unusual punishment is rejected.

**B**. **Petitioner's claim of ineffective assistance of counsel is without merit because her attorney did not have the option of asking the court to reduce the wobbler offenses to misdemeanors, as he had already entered into a plea agreement with the People on Petitioner's behalf**.

Petitioner alleges that she was denied effective assistance of counsel. Specifically, Petitioner claims that her trial attorney failed to move the court to reduce her charged wobbler offenses to misdemeanors. Even after the enactment of the Three Strikes law a trial court retains discretion under section 17, subdivisions (b)(1) and (3) to determine whether a wobbler should be reduced to a misdemeanor. People v. Superior Court (Alvarez) 14 Cal. 4th 968, 974-75 (1997). Under the Three Strikes scheme, prior convictions do not become strikes for sentencing purposes until there exists a predicate current felony conviction. Therefore, if the trial court had determined that the offenses should have been sentenced as misdemeanors, the Three Strikes law would not have been triggered.

Id. at 975; § 667 (c).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the sixth amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688. A criminal defendant must also establish prejudice before he can obtain relief. Id. at 691-92. Further, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must show that there is reasonable probability that, but for counsel's unprofessional errors or omissions, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693. Petitioner must show that counsel made errors so serious that he/she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be clearly established Federal law, as determined by the Supreme Court of the United States for the purposes of 28 U.S.C. § 2254(d) analysis. Williams v. Taylor, 529 U.S. at 405.

For reasons discussed below, this Court concludes that Petitioner's claim of ineffective assistance of counsel fails and finds the actions taken by her attorney to be reasonable and non-prejudicial.

A reasonably competent defense attorney is expected to assert all legitimate arguments for the least restrictive punishment for his or her client. The California Court of Appeals, however, found that Petitioner's counsel had a rational purpose for not seeking a reduction of the wobblers to misdemeanors. Petitioner was charged with four felonies: first degree burglary, two counts of possession of stolen property, and possession of methamphetamine. On Petitioner's behalf, her counsel negotiated a disposition whereby the People agreed to dismiss the burglary charge, the only one of the four charged offenses that is statutorily categorized as a "serious" felony for enhancement

9

and strike purposes. §§ 667(a)1, 1192.7(c)1. In exchange, Petitioner specifically agreed to plead guilty and no contest respectively, to possession of methamphetamine and possession of stolen property. This plea agreement was based on the condition that Petitioner plead guilty or no contest to at least some felony - as opposed to misdemeanor- offenses. Thus, any attempts by counsel to request the court at sentencing to reduce the wobblers to misdemeanors would be contrary to the plea agreement. The court also found that since the ultimate discretion lay with the trial court, it is not reasonably probable that even if Petitioner's counsel had asked for a lower offense, Petitioner would have obtained a more favorable result.

In the absence of unreasonable behavior on the part of Petitioner's counsel, or prejudice to the Petitioner, the claim of ineffective assistance of counsel fails.

## V. CONCLUSION

The Court finds the California Court of Appeals' determination of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

Dated: September 8, 2005

03cv635hc

/s/James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alex Mendoza mendozalaw@adelphia.net
Kelly Michelle Croxton Kelly.Croxton@doj.ca.gov
Peggy S. Ruffra peggy.ruffra@doj.ca.gov

**Dated: September 8, 2005**                    **Richard W. Wieking, Clerk**

                              **By:_/s/JW Chambers_____**
                              **Ronald L. Davis**
                              **Courtroom Deputy**